SERDAN, Administratrix, Respondent, vs. FALK COMPANY,
Appellant.

*March 13—April 8, 1913.*

*Trial: View: Discretion: Master and servant: Death caused by in-
competency of fellow-servant: Notice to master of incompe-
tency: Negligence: Proximate cause: Evidence: Damages: Special
verdict: Appeal: Harmless errors.*

1. Under sec. 2852, Stats., it rests in the sound discretion of the
   trial court whether or not a view by the jury shall be had;
   and the granting of a view will not be held error unless pal-
   pably wrong and prejudicial.
2. In an action for death of a servant, alleged to have been caused
   by negligence of the master in retaining in its employ a fellow-
   servant known to be incompetent, it was not error, after suffi-
   cient evidence had been put in to warrant the jury in finding
   the fact of incompetency, to receive evidence of the reputation
   of the fellow-servant for incompetency, as bearing upon the
   question of notice to the defendant, even though it was ad-
   mitted that defendant's foreman knew of such incompetency.
3. In an action for death caused by negligence it was error to ad-
   mit evidence as to the age and health of the parents of the
   widow and the age of the father of the deceased; but as such
   evidence could affect only the question of damages and it ap-
   pears that the amount awarded is not excessive, the error was
   not prejudicial.
4. Where the deceased was forty-one years of age, in good health,
   and earning about $15 per week, and left surviving a widow
   twenty-eight years of age, also in good health, a verdict of
   $4,500 for his death was not excessive.
5. Where the special verdict as submitted covers all the material
   issues in the case, it was not error to refuse to submit addi-
   tional questions.
6. Where a master negligently retains in his employ an incompe-
   tent servant whose incompetency causes an injury, the mas-
   ter's negligence is, as a matter of law, the proximate cause of
   the injury.
7. Where a special verdict finds that the incompetency of a fellow-
   servant was the proximate cause of the injury complained of,
   and also that defendant's negligence in permitting such serv-
   ant to do the work which resulted in such injury was the prox-
   imate cause thereof, the latter finding controls and entitles the
   plaintiff to judgment.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge.  *Affirmed.*

Action to recover damages for the death of Phillip Serdan, alleged to have been caused by the negligence of the defendant in retaining in its employ a servant, Matyilski, known by it to be incompetent, but of whose incompetency the deceased was not aware, and in failing to warn the deceased of such incompetency of Matyilski.

The defendant was a manufacturer of heavy machinery and operated in its plant a foundry for large castings.  In it were four electric traveling cranes for use in moving castings and other heavy material.  They traveled from east to west and *vice versa,* and were "racked in" and "racked out" to the north and south.  Each crane was operated by a craneman, stationed in a cage suspended from the bridge of the crane, and two men, called chainmen, were usually employed to attach and detach weights to be, or which had been, lifted. Each crane was capable of lifting several tons at a time.

On June 16, 1910, the deceased, who had been working in the foundry for about eight months, was engaged in shoveling sand into a milling machine in the foundry.  He had nothing to do with the operation of the cranes.  An employee named Lewinski was a craneman operating one of the cranes, Matyilski was a chainman employed in connection with the cranes, and Gregson was the foreman of the foundry.  Shortly before the accident Lewinski called Matyilski into the cage of the crane operated by him, and then left the foundry. During the absence of Lewinski, Matyilski operated the crane, lifted and moved certain flasks and molds.  In doing so he negligently struck the molds against the milling machine, thereby breaking one of the ropes by which the molds were suspended, and one of the flasks fell upon the deceased and so injured him that he died in a short time.  He left a widow, *Mary Serdan,* who brings the action as administratrix.

The jury found (1) that at the time Franz Matyilski took

charge of the crane, shortly before the accident, there was no load, consisting of a mold or flasks, hanging suspended from the slings of the crane; (2) that the defendant negligently permitted said Franz Matyilski to operate the crane in question by carrying a load or loads therewith immediately before the accident, which resulted in the death of Phillip Serdan; (3) that any failure on the part of defendant to exercise ordinary care to prevent Franz Matyilski from operating such crane by carrying a load or loads therewith was the proximate cause of the injury to deceased; (4) that the defendant company, in the exercise of ordinary care after discovering the incompetency of Franz Matyilski on Monday, the 13th of June, ought to have prevented his further operating the crane in any manner; (5) that such failure to have prevented his further operating the crane was the proximate cause of the injury to deceased; (6) that the incompetency of Matyilski was the proximate cause of the death of Serdan; (7) that the defendant did not negligently fail to furnish the said deceased, Phillip Serdan, a reasonably safe place in which to perform his work at or near the sand mill; (8) that said chainman, Franz Matyilski, operated said crane so as to hoist from the ground the flasks which struck against the sand mill and caused the accident to deceased, Phillip Serdan; and (9) damages, $4,500.

The defendant moved (1) for judgment in favor of the defendant upon the verdict, or for judgment for defendant notwithstanding the verdict; (2) to reverse the answers to the second, third, fourth, fifth, and sixth questions, and for judgment for the defendant upon the verdict so amended; and (3) to set aside the verdict and grant a new trial upon grounds therein specified. Each of said motions was denied and judgment for plaintiff was entered, from which judgment the defendant appealed.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *A. J. Hedding* and *Houghton, Neelen & Houghton,* and oral argument by *F. W. Houghton* and *Albert Houghton.*

VINJE, J.   The trial court permitted the jury to view the premises.   The defendant objected to this on the ground that the situation was entirely changed, because the crane in question was no longer in the foundry but in another building, and the sand mill referred to in the testimony had been moved about a hundred feet.   It is also claimed that it was highly prejudicial to defendant to have the jury view work of such an apparently dangerous character as is carried on in a large foundry.   Under our practice and the provisions of sec. 2852, Stats., it rests within the sound discretion of the trial court whether or not a view shall be had.   The exercise of such discretion cannot be successfully assigned as error unless palpably wrong and prejudicial.   *Pick v. Rubicon H. Co.* 27 Wis. 433; *Boardman v. Westchester F. Ins. Co.* 54 Wis. 364, 11 N. W. 417; *Andrews v. Youmans,* 82 Wis. 81, 52 N. W. 23; *Groundwater v. Washington,* 92 Wis. 56, 65 N. W. 871; *Koepke v. Milwaukee,* 112 Wis. 475, 88 N. W. 238; *Rickeman v. Williamsburg City F. Ins. Co.* 120 Wis. 655, 98 N. W. 960.   Since the only sharply litigated question as far as defendant's liability was concerned was that of notice to it of Matyilski's disobedience of orders not to run the crane, it is not perceived how the defendant was prejudiced by the view, even though it be conceded it was not necessary.   There is practically no dispute in the evidence as to who directly caused the injury and how it happened, so the view could not have influenced the jury in determining the questions really litigated.

Plaintiff's witness Silbar was permitted to answer over defendant's objection the question, "Do you know what the general reputation among the employees of the *Falk Company* of Matyilski was as to his fitness and competency to run

a crane prior to the time that Serdan was killed?" The witness answered, "It was that he ran the crane and did not know how to run the crane." Plaintiff claims this evidence was introduced for the purpose of showing notice to the defendant of Matyilski's incompetency. Before the question was asked of the witness several witnesses had testified as to the incompetency of Matyilski. The defendant claims that since it was admitted that Gregson, the defendant's foreman, knew that Matyilski was not a proper man to operate the crane in lifting and carrying loads, and that he had forbidden him to do so, the evidence would not be construed by the jury as tending to show notice to the defendant of Matyilski's incompetency, but would be understood by them as proving the fact that Matyilski frequently ran the crane before the accident, and that such fact, if true, could not be proved in such way, and as to the fact of incompetency such evidence was improper because the fact was not disputed. In *Moering v. Falk Co.* 141 Wis. 294, 124 N. W. 402, it was held that after sufficient evidence to warrant a jury in finding that a servant has been incompetent has been put in, evidence of the reputation for incompetency or recklessness of the servant is competent upon the question of notice to the defendant. Notwithstanding the defendant's admission that its foreman knew of Matyilski's incompetency, we think it was proper to permit the witness to answer the question, and since testimony had already been introduced that Matyilski had frequently run the crane before the accident, it is not perceived how the defendant was prejudiced by the answer to the question.

Plaintiff was permitted to introduce evidence as to the age and condition of health of the father and mother of Mary Serdan, the widow, and also of the age of the father of the deceased. This was error, because it raised a collateral issue not germane to the case. It is proper to receive competent evidence of the expectancy of life of the deceased and of

the widow as bearing upon the question of financial loss she has sustained by reason of the death of her husband. The error, however, cannot be regarded as prejudicial, and under the provisions of sec. 3072$m$, Stats., must be disregarded. The evidence could affect only the question of damages. The deceased was forty-one years of age, in good health, and earning about $15 per week at the time of his death. He left surviving him his widow, aged twenty-eight, who was also in good health. The jury assessed her damages in the sum of $4,500. This cannot be regarded as excessive.

The defendant requested the court to submit to the jury as a part of the special verdict the following questions:

(1) "Ought the foreman, John Gregson, Jr., in the exercise of ordinary care, to have known in time to have prevented the accident that Franz Matyilski was operating the crane referred to and carrying a load or loads therewith on the day of the accident?"

(2) "Did the defendant negligently fail to warn the deceased, Phillip Serdan, of any danger resulting from the running of said crane by said Franz Matyilski?"

In so far as any issues material to the controversy embraced in the above questions are concerned, they are contained in the special verdict submitted to the jury. The verdict returned by it, for reasons hereinafter to be stated, is deemed to have covered all the material issues in the case. It was therefore not error to refuse to submit the requested questions.

As will be seen from the statement of facts, the jury found that the defendant negligently permitted Matyilski to operate the crane at the time of the accident, and that such negligence was the proximate cause of Serdan's death. They further found that defendant, in the exercise of ordinary care, after having discovered his incompetency, ought to have prevented his further operating the crane in any manner, and that such failure to prevent his operation of the crane was the proximate cause of the injury to the deceased. They also

found that the incompetency of Matyilski was the proximate
cause of such injury.  Matyilski was a fellow-servant of Ser-
dan, and it is claimed that if his negligence was the proxi-
mate cause of the latter's death there is no liability on the
part of the defendant.  This is true, and the verdict would
not support a judgment against the defendant if full force
and effect should be given to the jury's answer to the sixth
question finding that a fellow-servant's incompetency was the
proximate cause of Serdan's death.  The sixth question was
superfluous under the issues litigated.  In a certain sense in
every case where a defendant is negligent in keeping an in-
competent servant in his employ it may be said that the in-
competency of the servant is the direct cause of the accident,
though not in law the proximate cause thereof.  In seeking
for the proximate cause of an injury the proper starting place
is the injury itself.  *Seaver v. Union,* 113 Wis. 322, 89 N.
W. 163.  In this case we ask, How was Serdan injured? and
we answer, By the incompetency of Matyilski.  But we must
not stop here.  The further inquiry arises, Was there any re-
sponsible cause back of the servant's incompetency that al-
lowed it to operate and so produce the injury? and the an-
swer is, Yes, the negligence of the defendant in knowingly
permitting the incompetent servant to continue in his employ-
ment, thus giving occasion for the exercise of the servant's
incompetency.  That was the first cause that set in motion
the other causes and ultimately produced the injury, though
it was not the immediate or direct cause.  The jury, therefore,
having found that defendant's several acts of negligence con-
stituted the proximate cause of Serdan's death, must have
misconstrued the sixth question.  For if it be a fact that
the evidence sustains the findings of defendant's negligence,
then as a matter of law the incompetency of Matyilski was
not the proximate cause of the injury, though it may have
been the direct cause thereof.  That the trial court must have
construed the jury's answer to the sixth question as we do is

evidenced by the fact that he gave judgment for plaintiff upon the verdict as returned.

Moreover, where the evidence sustains findings that defendant has negligently retained in its employ an incompetent servant and that the incompetency of the latter has caused an injury, then it can be said as a matter of law that the negligence of the defendant was the proximate cause of the injury.

It is earnestly and forcefully argued by the defendant that the evidence does not sustain the finding that it had knowledge of·the fact, or could reasonably anticipate, that Matyilski might violate his orders not to lift loads with the crane. We have carefully examined the evidence upon this point, and though it is not very clear and persuasive, yet we cannot say that it is insufficient to support the verdict.

Several errors are assigned upon instructions to the jury. After a careful examination of them we reach the conclusion that they are not well taken and that they do not require detailed treatment.

*By the Court.*—Judgment affirmed.